UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JERRY JERON DANIELS,          :
                                   :
          Petitioner           :
                                   :
      v.                        : CIVIL NO. 3:CV-13-2187
                                   :
MICHAEL OVERMYER, et al.,    : (Judge Kosik)
                                   :
          Respondents      :

**MEMORANDUM**

## I.    Introduction

This matter is before the court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Jerry Jeron Daniels ("Petitioner"). (Doc. 1.)  In support of the Petition, he has submitted a Memorandum of Law.  (Doc. 2.) Petitioner proceeds pro se and raises two (2) challenges to his Adams County Court of Common Pleas conviction for rape, involuntary deviate intercourse, terroristic threats, simple assault, intimidation of a witness or victim, harassment and stalking following a jury trial.[1]  He received an aggregate sentence of eleven (11) to twenty-two (22) years imprisonment.  Following careful consideration of the parties' submissions, the amended petition for habeas relief will be denied.  Additionally, a

---

[1] There were four (4) separate criminal cases filed against Petitioner in Adams County that the Commonwealth later moved to consolidate for purposes of trial.  See CP-01-CR-0048-2006; CP-01-CR-0821-2006;CP-01-CR-0826-2006 and CP-01-CR-1008-2006.  (Docs. 1, Pet. at 1; 20, Resp. at 5-8.)

certificate of appealability will not be issued.

## II.    Factual Background

The following facts are extracted from the Adams County Court of Common

Pleas opinion on Petitioner's post-conviction collateral relief petition (Doc. 2-1) and

adopted by the Pennsylvania Superior Court's affirmance of that decision (Doc. 2-2).

The facts are as follows:

> Defendant and the victim, Stacie Daniels, were married on March 24,
> 2005.  On December 31, 2005, they went out for the evening and ended
> up at a bar known as Old Mill Inn.  While there, Defendant became
> angry when Ms. Daniels showed another man a picture of the couple's
> young child.  Defendant also involved himself in a verbal confrontation
> with another customer.  The bartender noticed Ms. Daniels was upset
> and crying.  Defendant and his wife left the bar sometime after 1:00 a.m.
>
> When the couple arrived on the front porch of their home, Defendant
> struck Ms. Daniels on the head and back and pushed her against the
> railing.  Ms. Daniels fell down, but tried to fight back.  Immediately
> upon entering the home, Ms. Daniels dialed 911.  Defendant threatened
> her into reporting that the call was a mistake and Ms. Daniels complied.
>
> Defendant proceeded to the kitchen and retrieved a knife, he then
> ordered Ms. Daniels into the bedroom and directed her to remove her
> clothing.  While the couple was lying on the bed, and with the knife
> against Ms. Daniel's throat, Defendant expressed that he was going to
> kill her and began running the tip of the knife down her body.  Defendant
> stated he was angry because Ms. Daniels never performed oral sex on
> him and ordered her to do so at that time.  Ms. Daniels was scared, so she
> performed oral sex while Defendant continued pointing the knife at her.
>
> Shortly thereafter, police arrived at the residence.  Ms. Daniels was able
> to get out of there, but Defendant barricaded himself inside for several
> hours.  Defendant was eventually arrested and interviewed by
> Pennsylvania State Police Trooper Gregg Dietz.  Defendant denied
> assaulting Ms. Daniels but "maybe" he "did things."  He denied forcing

his wife to have oral sex but was "not ruling it out."  Trooper Dietz advised Defendant to have no contact with Ms. Daniels whatsoever.  Ms. Daniels suffered a black eye and bruises on her leg, arms, and back which lasted several weeks.

On January 2, 2006, Defendant was charged in CR-48-2006 with Rape, Involuntary Deviate Sexual Intercourse, Terroristic Threats, and Simple Assault (2 counts), 18 Pa. C.S.A. §3121(2), 3123(2), 2706(a)(1) and 2701(a)(3), respectively.

It is clear that Ms. Daniels was initially reluctant to have charges pursued against Defendant because they were married, she wanted to resolve their differences, and she had three young children to support.  Therefore, she maintained contact with Defendant after his arrest.  She visited Defendant at the Adams County Prison 12 times between January 8 and April 7, 2006.  Ms. Daniels also sent Defendant two cards, seven letters, and family photographs.

On February 8, 2006, Defendant wrote to Ms. Daniels and asked that she send money to him at the prison.  On March 2, 2006, Defendant wrote to Ms. Daniels wherein he was urging her to speak with the District Attorney because "it's really up to you what happens."[Footnote 1: Prior to February 21, 2006, Defendant had been requesting Ms. Daniels to testify that she could not recall what happened on January 1.  In a letter to Defendant, she reported that she was not able to do that. (Def. Ex. 4).] Five days later, he wrote again, asking Ms. Daniels to wait for him, thanking her for writing to his attorney, and requesting her to remove the block preventing him from being able to call her by telephone.  Another letter followed on March 13, addressed to Defendant's son. [Footnote 2: The child was born on October 20, 2005.  It was interesting how Defendant was attempting to communicate with Ms. Daniels through a child who could not speak or write.] Therein, Defendant wrote "I must admit I did something to your mom."  A portion of the letter was intended for Daniels in which he urged her to "do the right thing."  A separate letter dated March 13 was sent to Ms. Daniels wherein Defendant indicated he was "trying to get help on my bad things which are drinking & putting my hands on you" and that he was "mad at myself I let alcohol (sic) to take advantage of me that nite."

On March 15, Defendant wrote to Ms. Daniels and admitted "I did batter

you." Nevertheless, he urged her not to testify against him by encouraging her to "plead the Fifth." [Footnote 3: Defendant wrote, "You are a citizen of the United States right. OK, you have what are called constitutional rights. The Fifth one is really important. This one allows you to just say I plead the Fifth Amendment. You can call my lawyer or ask a paralegal about your Fifth Amendment right. You say you want me home right. Then you want (sic) to lie or do anything else but say I plead the Fifth. The Fifth Amendment Right not incriminate yourself or another. It's easy please don't let the D.A. know." (emphasis in original.)] Defendant followed that theme a day later when he wrote, "I'm not trying to pressure you but the DA can't make you testify." Finally, in an undated letter Defendant again urged Ms. Daniels not to testify against him. [Footnote 4: Defendant wrote "Please if you do what I tell you nothing will happen. First go to the DA office or even call ask to speak with [District Attorney] Shawn Wagner OK. Then tell him that you stated to Mrs. Caldwell [Assistant District Attorney] you didn't want to testify against me & Mrs. Caldwell stated to you you had to then the State Police & Mrs. Caldwell stated to you if you change your story that they were charging you with perjury. Then tell him it never happen (sic) like that. You was mad at me for threatening to take the baby with me."

Mrs. Daniels notified the Adams County Victim Witness Office that Defendant was forwarding letters asking her not to testify so he would get out of trouble. Near the end of March 2006, Trooper Dietz became aware of the letters Defendant had written to Ms. Daniels. He went to the prison and personally instructed Defendant not to contact Ms. Daniels for any reason and to stop trying to get her not to testify or he could be charged with Intimidation of a Witness.

Thereafter, Ms. Daniels continued to visit and write to Defendant. In early May, Ms. Daniels wrote to the Assistant District Attorney requesting that the Rape charges be dismissed. She believed this would stop Defendant from continuing to ask her to change her story. On May 15, Ms. Daniels wrote Defendant that she wanted to drop the "rape charges." [Footnote 5: Nevertheless, Ms. Daniels did testify that Defendant forced her to put her mouth on his penis.] Clearly, she still hoped her marriage could be salvaged. [Footnote 6: Nevertheless, by the time of trial, Ms. Daniels had moved on with her life and wanted a divorce (N.T. 80, 87; 12/11/06).] By letter postmarked June 16, Ms. Daniels notified Defendant that she arranged removal of the block on her

phone so Defendant would not be prevented from calling her.

On July 25, 2006, Trooper Dietz became aware of three more letters which Defendant wrote to Ms. Daniels between July 14-16. These letters continued the pattern of playing on Ms. Daniels' emotions and urging her to recant by testifying that she does not remember what occurred on January 1. [Footnote 7: For example, in Commonwealth Ex. 6A, written July 14, 2006, Defendant wrote, "Tell them you just don't remember . . . I'm seriously thinking about taking this case to trial. But you must help like saying that you 'don't remember that you were drunk'. . . If you don't remember there's nobody in the courtroom that can make you remember either not the D.A., judge, or Mrs. Rice [Defendant's attorney]. . . Be like I really don't remember. That's only if you want me home or not the D.A. can't charge you with perjury if you don't remember OK. Inform the judge that you told the DA back during the preliminary hearing that you didn't want to testify. That she told you that had to . . . This is the only way I don't get to go up state . . ." Commonwealth Ex. 6B. Defendant wrote on July 15, 2006, "I'm admitting I did wrong by putting my hands on you. . . Even if she tries to get you for perjury since; you have never been in any kind of trouble you'll get probation maybe 6 months no jail time for real. But you can't be charged with perjury if you don't remember. Be like honestly I don't remember what happen. That's all you have to say & do. Then she may say to you do you remember what happen on the porch. Be like I honestly don't remember. Then she may bring the victim/witness form you filled out is this you signature. Be like I honestly don't remember. I was on anti-depression pills & drinking. . ." Commonwealth Ex. 6C. Defendant wrote on July 16, 2006, "Explain to the judge that this whole ordeal didn't happen like this. I was just mad at my husband and wanted him out of the house. . . Or tell the judge that Officer Dietz & the D.A. made you testify. . . Tell him Dietz took advantage of you simply cause you were really intoxicated . . . It's alright to lie a little . . ."] Ms. Daniels described being upset and worried after receiving these letters because she did not know what would happen after Defendant got out of jail if she did not do as he requested. Ms. Daniels notified the Victim Witness Office and, shortly thereafter, charges were filed in CR-826-2006 for Intimidation of Witness or Victim and Harassment. 18 Pa. C.S.A. §5952(a)(3) and 2709(a)(7).

Defendant was directed by Magisterial District Judge Daniel Bowman

not to have any contact with Ms. Daniels' family or friends. Nevertheless, Defendant continued in his efforts to communicate with Ms. Daniels through family and friends.  On August 1 Defendant sent a letter to Cindy Jacobs, a neighbor of Ms. Daniels.  Defendant requested Ms. Jacobs to ask Ms. Daniels to call his mother.  On a separate piece of paper the following words were written, "Bottom line is to say 'I don't remember' I have Black-outs.  OK.  Nothing in this world can make you remember."  Ms. Daniels was upset when she learned of this and contacted the Victim Witness Office.  On August 9, 2006, Defendant was charged in CR-821-2006 with two counts of Harassment, 18 Pa. C.S.A. §2709(a)(7) and 2709(3).

On September 11, Defendant sent a letter addressed to "Marie Busbey" [Footnote 8: "Marie" is Ms. Daniels' middle name and "Busbey" is her maiden name] at the address of Ms. Daniels' mother, Patricia Busbey. He urged her not to share the letter with Trooper Dietz or the District Attorney's Office.  On September 21, Defendant sent a letter addressed to Ms. Daniel's mother but a portion of the letter was clearly written to Ms. Daniels.  These letters also upset Ms. Daniels when she learned of them.  As a result of this correspondence, Defendant was charged in CR-1008-2006 with Stalking and Harassment, 18 Pa. C.S.A. §2709.1(2) and 2709(a)(7).

All cases were consolidated for purposes of trial.  A jury trial was held on December 11, 2006. Prior to trial, Defendant argued that the Commonwealth should be precluded from introducing evidence that on March 27, 2005, he was charged with Simple Assault by physical menace and Harassment for conduct directed against his wife.  Several days later, the victim filed a Protection From Abuse (PFA) against Defendant.  Subsequently, that action was modified to allow Defendant to return to the home.  In July 2005, Defendant entered a nolo contendere plea to the Simple Assault charge.

It was clear that the 2005 matters were only relevant to the Stalking charge in CR-1008-2006 because it would, upon conviction in No. 1008, change the gradation of the offense from a misdemeanor of the first degree to a felony of the third degree.  18 Pa. C.S.A. § 2709.1(c).  If the Commonwealth insisted on introducing this evidence, [the trial judge] indicated that CR-1008-2006 would be severed from the other cases. Instead, the parties agreed that if Defendant was found guilty of Stalking,

there would be a stipulation for it to be granted as a third degree felony.
(Doc. 2-1 at 3-8.)

Petitioner was found guilty on all counts.  He was sentenced to an aggregate term of 11-22 years in prison.  Petitioner filed a motion seeking post-trial relief on February 26, 2007.  (Doc. 20, Ex. J.)  In the motion, he raised the following issues: (1) jury verdict based on insufficient evidence/against the weight of evidence; (2) denial of fair trial when Ms. Daniels testimony included reference to warrants for Petitioner in Florida; and (3) denial of fair trial when timeline displayed by Commonwealth referenced a PFA order against Petitioner.  This motion was denied by the trial court on October 23, 2007.[2] (Id., Ex. N.)

## III.   Procedural History

### A.   Direct Appeal

A direct appeal was pursued by Petitioner to the Pennsylvania Superior Court.

---

[2] It was concluded by the trial court that there was sufficient and ample evidence to find Petitioner guilty beyond a reasonable doubt in all four of the criminal cases against Petitioner. The trial court found that the reference to Petitioner's warrants in Florida was the result of a mere passing reference; was in response to questioning by defense counsel and not elicited by the Commonwealth; there was no other discussion of Petitioner's criminal record in the jury's presence; and a singular reference to Petitioner's prior criminal conduct was not so prejudicial as to require a new trial.  Finally, the trial court found that Petitioner had waived his post-sentence claim concerning the Commonwealth presenting a timeline with a reference to a prior PFA order because there was no evidence in the record concerning a reference to any such evidence, nor was there an objection made on the record or a request for a mistrial.  (Doc. 20-4, Ex. N.)

Raised in the direct appeal were the following issues:

1.   Did the trial court err in determining there was sufficient evidence to support a conviction for intimidation of a witness?

2.   Did the trial court abuse its discretion in not setting aside the verdict as against the weight of the evidence?

3.   Did the trial judge err in not granting a mistrial following improper and prejudicial references to warrants and a Protection From Abuse order against [] Appellant?

(Id. at 41.)

The Superior Court affirmed the judgment of sentence of June 5, 2009.  See Commonwealth v. Daniels, 981 A.2d 309 (Pa. Super. 2009)(unpublished)(table)(Id., Ex. Q.)  The Pennsylvania Supreme Court denied a petition for allowance of appeal on December 9, 2009.  See Commonwealth v. Daniels, 985 A.2d 970 (Pa. 2009) (table)(Doc. 20-5, Ex. R).

**B.    PCRA proceedings**

On March 5, 2010, Petitioner filed a pro se PCRA petition.  (Id., Ex. S.) Counsel was appointed.  In the petition, the following grounds were raised:

1.   Failure of trial counsel to object to Petitioner's leg shackles being visible to jury;

2.   Failure of trial counsel to object to the jury composition as being racially discriminatory;

3.   Failure of trial counsel to object to prejudicial remarks made by the prosecutor during closing remarks;

4.      Failure of trial counsel to object to and seek removal of a
        sleeping juror;

5.      Failure of trial counsel to properly pursue an objection to
        prior bad act testimony; and

6.      Prosecutorial misconduct for pressuring victim to testify.

Thereafter, an evidentiary hearing on the petition was conducted.  At the

hearing, Petitioner raised the following additional claims:

1.      Prejudice to Petitioner because the opening statement and
        closing argument of Commonwealth were not recorded;

2.      Ineffective trial counsel in failing to request sequestration of
        the witnesses;

3.      Ineffective trial counsel in failing to have the knife tested
        for DNA;

4.      Ineffective trial counsel in failing to have a psychological
        evaluation completed to aid in sentencing;

5.      Ineffective trial counsel in not advising Petitioner in
        advance of trial of the potential of a deadly weapon
        enhancement if convicted; and

6.      Ineffective trial counsel in not filing requested post-trial motions.

(Doc. 2-1 at 8-9.)

On October 25, 2011, the PCRA petition was denied by the Adams County

Court of Common Pleas following the hearing. (Id. at 8-21; Doc. 20-7, Ex. X.)  On

appeal to the Pennsylvania Superior Court, the only issues raised for review were the

following:

9

1.    Did the PCRA court commit legal error in finding that shackling [Petitioner] during trial without placing reasons on the record for restraining him is insufficient grounds for relief absent a showing of actual prejudice to [Petitioner]?

2.    Did the PCRA court commit legal error in finding that failure to record and transcribe the opening and closing arguments of trial counsel is insufficient ground for relief absent a showing of actual prejudice to [Petitioner]?

The Superior Court affirmed the denial of the PCRA on May 9, 2012.  (Doc. 20-8, Ex. AA.)  The Pennsylvania Supreme Court denied allocatur on November 28, 2012.  (Id., Ex. AC.)

## C.    Federal Habeas Petition

The pending federal habeas corpus petition was filed on July 5, 2013.  In the petition, the following claims are raised:

1.    Ineffective assistance of counsel resulting in the conviction being in violation of Sixth and Fourteenth Amendments of the United States Constitution and Article 1 section 9 and Article 5, § 9 of the Pennsylvania Constitution or laws of this State resulting in an inherent prejudice or fundamentally unfair outcome of the proceeding. Trial/ Appellate Counsel Kristin Rice, Esquire, was constitutionally ineffective in that counsel permitted, without objection, the Petitioner to be shackled during the guilt-determining phase of his trial without the trial court placing justified reasons on the record by shackling Petitioner was necessary; and trial counsel failed to raise a meritorious claim regarding the Petitioner being shackled during his trial by failing to specifically raise this ground for relief in the statement of matters complained of on appeal, and trial counsel failed  to request a curative instruction where it was evident from the record that exceptional circumstances were not present because Petitioner's

behavior could not reasonably be expected to disrupt the trial proceedings nor did the Petitioner threaten to escape, nor did his behavior demonstrate that he might attack others or be a danger to himself thus, depriving Petitioner to the indicia of the presumption of innocence.

2. Ineffective assistance of counsel resulting in the conviction being in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution or laws of this State resulting in an unreliable or fundamentally unfair outcome of the proceedings by operation of law. Trial/Appellate Counsel Kristin Rice, Esquire, was constitutionally ineffective for failing to request a transcript of all parts of the testimony at trial including the record or transcripts of the opening and closing arguments of counsel at trial, as prescribed by the Uniform Rules of Judicial Administration §§ 5000.2(g) and 5000.5, in which Petitioner claimed specific and colorable reversible error in the prosecutor's unrecorded opening and closing arguments thus, denying the Petitioner Due Process of Law, and by denying him and the reviewing court a meaningful and effective appellate review of the Petitioner's claims.

(Doc. 1, Pet. at 8, 11.)  The petition is ripe for consideration.  For the reasons that follow, the petition will be denied.

## IV.  Governing Legal Principles

### A.  Standard of Review

Since the instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), review of Petitioner's claims is governed by 28 U.S.C. § 2254(d).  Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Under the AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); see also Harrington v. Richter, 562 U.S. 86, 97-98, 131 S.Ct. 770, 783-84, 178 L.Ed.2d 624 (2011); Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).  The first prong applies both to questions of law and to mixed questions of law and fact, Williams, 529 U.S. at 384-86, 120 S.Ct. at 1508-09, while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523.  A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.  The federal court on habeas review may not issue

the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., 529 U.S. at 411, 120 S.Ct. at 1522.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413, 120 S.Ct. at 1523. "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., 529 U.S. at 411, 120 S.Ct. at 1523. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id., 529 U.S. at 409, 120 S.Ct. at 1522. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 2594-95, 115 L.Ed.2d 706 (1991). When there is no reasoned opinion

13

from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion.  See Ylst, 501 U.S. at 804, 111 S.Ct. at 2595.

The Supreme Court has affirmed that under the AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions.  See Harrington, 562 U.S. at 97-99, 131 S.Ct. at 783-85; Felkner v. Jackson, 562 U.S. 594, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011).  The Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Id. at 594, 131 S.Ct. at 1307 (citation omitted).

However, "if a properly preserved claim was not addressed by the state court on the merits, the deferential standards of the AEDPA do not apply."  Id. at 392.  In such instances, a "federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact."  Id. (quoting Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

## B.    Exhaustion and Procedural Default

A habeas petitioner must clear two procedural hurdles before the court may reach the merit of his habeas corpus petition.  These hurdles are those of exhaustion of remedies and procedural default.

A habeas petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion

requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S.838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts.  To "fairly present" a claim, a petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being asserted." Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010)(quoting McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)).  A federal claim not fairly presented to the reviewing state court may be either unexhausted or procedurally defaulted.

A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).[3]  The petitioner has the burden of establishing that the exhaustion

---

[3] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Common Pleas Court and then the Pennsylvania Superior Court either on direct or PCRA appeal, are considered exhausted for the purpose of federal habeas corpus relief under §2254.  See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Cases, No. 218, Judicial Administration Docket No. 1 (May 5,

requirement has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989);

O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

A petitioner's failure to exhaust state remedies will be excused if state

procedural rules preclude him from seeking further relief in state courts.  Lines v.

Larkins, 208 F.3d 153, 160 (3d Cir. 2000).  Although treated as technically

exhausted, such claims are nonetheless procedurally defaulted.  Lines, 208 F.3d at

160; Coleman v. Thompson, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 2565. 115

L.Ed.2d 640 (1991).  Similarly, if a petitioner presents a habeas claim to the state's

highest court, and that court "clearly and expressly" refuses to review the merits of

the claim due to an independent and adequate state procedural rule, the claim is

exhausted but procedurally defaulted.  See Coleman, 501 U.S. at 750.

A federal court cannot review the merits of procedurally defaulted claims

unless the petitioner demonstrates either: (1) "cause" for the procedural default and

"actual prejudice" as a result of the alleged violation of federal law;[4] or (2) failure to

consider the claims will result in a "fundamental miscarriage of justice."  Edwards v.

Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000);

Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001). To establish "cause," a

---

2000)(per curiam); see also Lambert v. Blackwell, 387 F.3d 210, 233-34
(2004).

[4] Where petitioner fails to establish cause, the court need not reach the
prejudice prong of the claim before denying it.  See Smith v. Murray, 477
U.S. 527, 533, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986).

petitioner must establish that "some objective factor external to the defense" impeded his ability to raise the claim in state court.  Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).  Once "cause" has been successfully demonstrated, a petitioner must then also prove "actual prejudice."  To establish "actual prejudice," "the habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 494, 106 S.Ct. at 2648 (citing United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)(emphasis in original)).

In order for a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 852, 867, 130 L.Ed.2d 808 (1995)(quoting Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.) Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623, 114 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).  "[A] petitioner asserting actual innocence . . . must rely on 'reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial.  Munchinski v. Wilson, 694 F.3d 308, 337-38 (3d Cir. 2012)(citing Schlup, 513 U.S. at 324, 115 S.Ct. at 865).  New evidence

which tends to undermine the credibility of a witness "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 349, 112 S.Ct. 2514, 2524, 120 L.Ed.2d 269 (1992).

There exists a final, very narrowly carved exception to the procedural default rule. The United States Supreme Court held in <u>Martinez v. Ryan</u>, ___ U.S. ___, ___, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), that a petitioner may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when post-conviction review is the first time a petitioner can bring such claims and petitioner had either ineffective collateral appeal counsel or no counsel at all. <u>Id</u>. at ___, 132 S.Ct. 1320-21. The Supreme Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, second or successive collateral petitions, or petitions for discretionary review in state appellate courts. <u>Id</u>. at ___, 132 S.Ct. at 1320. In order to establish "cause," petitioner must show that collateral appeal counsel was not appointed or was ineffective under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 695, 104 S.Ct. 2052, 268-69, 80 L.Ed.2d 674 (1984). <u>Martinez</u>, ___ U.S. at ___, 132 S.Ct. at 1318. Further, petitioner must also demonstrate that the underlying ineffectiveness of trial counsel claim is "substantial" and has "some merit." <u>Id</u>. at ___, 132 S.Ct. at 1318.[5]

---

[5] The court finds that <u>Martinez</u> has no application in the instant case. Petitioner was appointed counsel and the PCRA petition raised two ineffective trial

Finally, to the extent a petitioner presents unexhausted claims in a habeas

petition, the court may nonetheless deny them on the merits pursuant to 28 U.S.C.

§2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); see also Taylor v. Horn, 504 F.3d 416, 427 (3d Cir.

2007)("Here, because we will deny all of Taylor's claims on the merits, we need not

address exhaustion.")

## V.    Discussion

The court will now address the two grounds raised by Petitioner in his pending

federal habeas corpus petition.  In each ground, he appears to assert the

ineffectiveness of trial counsel.  The Sixth Amendment right to counsel is the right to

effective assistance of counsel.  Strickland v. Washington,466 U.S. 668, 686 (1984).

To warrant reversal of a conviction, a prisoner must show (1) that his counsel's

performance was deficient and (2) that the deficient performance prejudiced his

defense.  Id., at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).  The

Strickland test is conjunctive and a habeas petitioner must establish both the

_____

counsel claims.  Petitioner does not allege any ineffectiveness on the part of his
PCRA counsel.  The first ineffective assistance ground is exhausted with respect to
trial counsel's failure to object to Petitioner's shackling.  Any other ineffective
assistance ground that may have been raised in the PCRA was not procedurally
defaulted due to the fault of no PCRA counsel or ineffective PCRA counsel.  As far
as the second ground raised in the PCRA petition, Petitioner does not argue that
PCRA counsel was ineffective.

deficiency in performance prong, as well as the prejudice prong.  See Strickland, 466

U.S. at 687; Rainey v. Vainer, 603 F.3d 189, 197 (3d Cir. 2010).  Though Strickland's

ineffectiveness inquiry contains both a performance and prejudice component, the

Supreme Court has made clear that "[if it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, ... that course should be

followed."  Strickland, 466 U.S. at 697. [There is no reason for a court deciding an

ineffective assistance claim ... even to address both components of the inquiry if the

defendant makes an insufficient showing on one."  Marshall v. Handpicks, 307 F.3d

36, 86-87 (3d Cir. 2002)(internal citation and quotation marks omitted).

To prove deficient performance, a prisoner must show that his "counsel's

representation fell below an objective standard of reasonableness."  Id. at 688.  The

court will consider whether counsel's performance was reasonable under all of the

circumstances.  Id.  The court's "scrutiny of counsel's performance must be highly

deferential."  See id. at 689.  That is, there is a "strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."  Id.  In

raising an ineffective assistance of counsel claim, the petitioner "must first identify

the acts or omissions of counsel that are allegedly not to have been the result of

reasonable professional judgment."  Id. at 690.  Next, the court must determine

whether "in light of all the circumstances" those acts or omissions fall outside of the

"wide range of professionally competent assistance."  Id.

A petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Hanger-on, 496 F.3d 303, 310 (3d Cir. 2007)(quoting Strickland, 466 U.S. at 689).  This presumption is overcome by showing either that petitioner's counsel's "conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." Thomas v. Vainer, 428 F.3d 491, 499-500 (3d Cir. 1005).  When the record does not disclose counsel's actual strategy, the presumption is rebutted by a "showing that no sound strategy ... could have supported the conduct." Id. at 500.

To prove prejudice, a convicted defendant must affirmatively prove that counsel's alleged errors "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693.  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

> **A.    Ineffective trial counsel in failing to object to shackles during trial and trial court's failure to place justifications for such on the record, failure to request a curative instruction regarding the shackling, and for counsel's failure to raise the shackling of Petitioner in the matters complained of on direct appeal**

Petitioner claims that the shackling issue was not raised on direct appeal because trial counsel was unaware that the issue even existed.  However, Petitioner does admit that the issue of trial counsel's ineffectiveness was raised and addressed

by the state courts in his PCRA petition.

In his PCRA, Petitioner claims he "fairly implied" and "fully argued" that his conviction should have been vacated and the matter remanded because of the ineffectiveness of Kristin Rice, Esquire, his trial/appellate counsel, for failing to raise the issue that he had shackles on his legs during the trial.  First, it is clear that any issue other than the alleged ineffectiveness of counsel in not objecting to the wearing of shackles is unexhausted.  Counsel did not raise any related issue on direct appeal, and Petitioner did not raise any issue other than counsel's failure to object in his PCRA.  As such, all other additional theories of relief, are unexhausted and unicast.[6]

There is no dispute by the parties that the claim of ineffectiveness of counsel in failing to object to Petitioner wearing the shackles was raised in the PCRA. However, Petitioner was unsuccessful.  He appealed to the Pennsylvania Superior Court, which affirmed the PCRA court.  An appeal to the Pennsylvania Supreme Court was denied.  The Superior Court agreed with the following reasoning of the PCRA court in addressing Petitioner's ineffective assistance ground:

Defendant has framed this issue [concerning leg shackles] that trial

---

[6]  The court agrees with Respondent that any commingling by Petitioner of the issue of denial of a fair trial in with the exhausted issue of counsel's ineffectiveness in failing to object to the shackles is also unexhausted.  The issue of the denial of a fair trial was never presented to and ruled on by the state courts.  Petitioner sets forth no cause for his failure to raise this claim, and no prejudice resulting to him therefrom.

counsel was ineffective for not objecting to the fact that he was in leg shackles during trial rather than that being in leg shackles, in and of itself, entitled him to any relief.  For the sake of this discussion, both sides agree that Defendant's legs were shackled during the trial. [Footnote 10: The undersigned [the Honorable John D. Kuhn, then-President Judge of the Adams County Court of Common Pleas] was not aware of this restraint because Defendant was seated at counsel table when the Court entered and departed the courtroom and the fact that he was shackled was not otherwise brought to the Court's attention.  The legs of a defendant are not visible to the Court when he is seated at counsel table.[N.T. at 4-5, 6/11/10].

Trial took place in Adams County Courthouse No. 1.  When facing the bench, the courtroom layout has the jury box on the extreme left of the room.  The prosecutor's table is situated several feet to the right of the jury box and the defense table is located several feet further to the right. [Footnote 11: The prosecutor's table is approximately seven feet from the front wall of the jury box.  Each table is approximately six feet in width and the tables are separated by 12-18 inches.  This would place Defendant nearly 20 feet from the nearest juror.]  During trial, defense counsel sat closest to the prosecutor's table, her associate sat in the middle, and Defendant sat at the right side of the defense table, furthest from the jury. [Footnote 12: N.T. 21, 53-4; 6/11/2010.] Both the prosecution and defense tables are enclosed on three sides by wooden panels.

Defendant has offered no evidence that any juror actually saw him in shackles.  At most he argues that a juror may have seen his feet while entering the courtroom from the deliberation room located behind the jury box.  Furthermore, he cites case law that defendants are not to be shackled during the trial unless for cause placed on the record by the Court.  See **Commonwealth v. Laird**, 988 A.2d 618 (Pa. 2010); **Commonwealth v. Pezzeca**, 749 A.2d 968 (Pa. Super. 2000) and cases cited therein.  Here, the record contains no such discussion.

Defendant's trial counsel testified that she was aware Defendant was shackled and was sensitive to the issue of him being seen by the jury in that condition.  However, she reported that at no time did Defendant walk in front of the jury nor could his feet be seen by the jury even if his chair was pushed back from the table. [Footnote 13: N.T. 53; 6/11/2010.]

Even assuming, for the sake of argument, that the shackling of
Defendant in the courtroom by Sheriff's personnel was improper,
Defendant's claim fails because he has not shown how counsel's failure
to object prejudiced the outcome of trial. [Footnote 14: If a defendant
fails to satisfy the prejudice prong of the test for ineffective assistance of
counsel, the claim may be disposed of on that basis alone, without a
determination whether the other prongs have been met. **Com v. Jones**,
811 A.2d 1057, 1062 (Pa. Super. 2002).]. Prejudice cannot be presumed.
Actual prejudice has not been established.  In **Commonwealth v. Laird,
supra.**, the fact that a defendant's leg shackles might have been seen
briefly by the jury when returning to render its verdict in the guilt phase
of a murder trial was not enough to establish prejudice entitling the defendant to a
new trial.  Similarly, in the instant case,
there is
no
evidence
that the
jury was
able to
see
Defenda
nt's
shackles
on any
occasion.
As noted
above,
unless
counsel's
failure or
omission
prejudice
s the
outcome
of trial, a
defendan
t is not
entitled
to relief.
Here,

24

only
Defenda
nt's
speculati
on
supports
his claim
that any
juror saw
him in
shackles.
More is
required.

(Doc. 20-7 at 69-71; Doc. 20-8 at 54-55.)

The Superior Court's finding that the PCRA court's denial of Petitioner's

ineffective counsel claim for failure to object to the shackling was reasonable is

clearly supported by the record.  The Superior Court agreed with the trial court's

analysis that Petitioner failed to demonstrate any prejudice, a necessary component of

the ineffective assistance analysis.  As such, the court finds that Petitioner is not

entitled to habeas relief on this ground.

> **B.    Ineffective assistance of trial/appellate counsel in failing
> to request trial transcript, including transcript or record
> of opening and closing arguments of counsel as
> prescribed under the Rules of Judicial Administration,
> in which Petitioner claims the prosecutor's unrecorded
> opening and closing denied him due process of law and
> fundamentally unfair outcome of the proceeding**

In setting forth this second ground, Petitioner appears to raise both an

ineffective assistance of trial counsel ground for failing to request transcripts of the

opening and closing arguments at his trial <u>and also</u> that he was denied due process of law and review of appeal because the opening and closing arguments were not transcribed. (Emphasis added.)  This is made clear when reviewing Petitioner's memorandum of law in support of his habeas petition.  At one point he states that he is raising a due process claim based upon the trial court's error and not based upon the ineffectiveness of counsel (Doc. 2 at 55), and at another point states that he is raising an ineffective assistance of counsel claim.  (<u>Id</u>. at 53.)

Petitioner has never presented an ineffective assistance of counsel claim based upon trial counsel's ineffectiveness in failing to request a transcript of all parts of trial, including opening and closing arguments of counsel.  In his PCRA hearing, Petitioner for the first time presented the issue of the absence of a recording of opening and closing arguments based upon a theory of denial of due process.  After reviewing the record carefully, it is clear that Petitioner did not include in his claims to the state courts any claim concerning trial counsel's ineffectiveness for not obtaining transcripts of opening and closing statements. It is not until the pending federal petition that Petitioner argues that trial counsel was ineffective for failing to obtain transcripts.  This ground could have and should have been raised in the PCRA proceedings.

It is also clear that Petitioner has procedurally defaulted on any claim that he was denied due process of law because the opening and closing arguments at trial

were not recorded.  See Coleman, 501 U.S. at 747-48.  To the extent Petitioner's

claim is based, even in part, on a claim that the lack of a transcript of the closing

arguments deprived him of due process, this claim is clearly procedurally defaulted.

This claim was first raised on Petitioner's PCRA after the Pennsylvania Superior

Court affirmed Petitioner's judgment of sentence on direct appeal.  In his PCRA,

Petitioner said he was denied due process because the closing arguments at trial were

not transcribed.  Even though the PCRA court undertook a merits review of this

claim, the court found no prejudice resulted to Petitioner.  Moreover, and more

importantly, the state court on appeal found this claim to be waived in that said due

process claim was not raised on direct appeal.  The Pennsylvania Superior Court

reasoned as follows in finding the claim to be waived:

> We find this issue to be without merit.  To be eligible for relief under the
> PCRA [Post Conviction Relief Act], a "petitioner must plead and prove
> by a preponderance of the evidence . . . [t]hat the allegation of error has
> not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3).
> "[A]n issue is waived if the petitioner could have raised it but failed to
> do so before trial, at trial, during unitary review, on appeal or in a prior
> state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).  Appellant's
> issue – whether he was prejudiced by the trial court's failure to ensure
> closing arguments were transcribed – could have been raised in post-
> sentence motions or on direct appeal, but [Petitioner] failed to do so.
> **See, e.g., Commonwealth v. Marshall**, 812 A.2d 539, 543-44 (Pa.
> 2002)(finding fifteen issues waived that appellant could have, but failed
> to, raise on direct appeal).  Thus, we conclude that he is not entitled to
> relief under the PCRA.  **See** 42 Pa.C.S.A. § 9543(a)(3).

(Doc. 20-8 at 55-56.)  The foregoing was affirmed by the state's highest court - the

Supreme Court of Pennsylvania. (Id. at 81.)   The court finds that the state courts were

not unreasonable in finding that Petitioner waived this issue in that he could have, but

failed to, raise his claim alleging a denial of due process for no recording of the

opening and closing arguments at trial.

This court also finds reasonable the state court's conclusion that Section 9544

of Pennsylvania's PCRA constitutes an independent and adequate ground for

Petitioner's procedural default, and that he has failed to establish cause and prejudice

for his default.  It is not alleged that a procedural rule prevented Petitioner from

asserting on direct appeal that he was denied due process of law due to the lack of a

recording.  Despite Petitioner's arguments to the contrary, the state court's finding

that the record fails to establish prejudice to Petitioner is clearly supported by the

record. The Adams County Court of Common Pleas found as follows with respect to

the issue of prejudice, and this was affirmed by the Pennsylvania Superior Court:

> [F]ailure to record the closing of this case does not entitle Defendant to
> relief.  Even if the Court accepts Defendant's recitation of the
> prosecutor's closing argument, the comment does not rise to the level of
> improper argument entitling a defendant to a new trial.  There is no
> indication that the prosecutor made the comment more than once.  A
> prosecutor's closing remarks do not constitute reversible error unless
> their unavoidable effect was to prejudice the jury forming in their minds
> fixed bias and hostility toward the defendant so that the jury could not
> weigh the evidence objectively and return a proper verdict.
> **Commonwealth v. Ligons**, 971 A.2d 1125, 1157 (Pa. 2009).  Whether
> or not the prosecutor's remark was overzealous, it was not the type of
> statement the would prejudice the jury.  Not every unwise remark
> constitutes reversible error.  **Commonwealth v. Harris**, 884 A.2d 920,
> 927 (Pa. Super. 2005).  The jury was instructed how to view the closing
> arguments of counsel. [Footnote 29: N.T. 183; 12/11/2006.] The Court
> properly instructed the jury on the law and the weight to be given to the

evidence.  Juries are presumed to follow the law.  **Commonwealth v. Jones,** 811 A.2d 1057, 1062 (Pa. Super. 2002).  Without a showing of prejudice, Defendant's claim cannot prevail.

(Doc. 20-7 at 77-78.)  The state court's finding of no prejudice is a reasonable finding and is clearly supported by the record.

The state court's finding that Petitioner has also failed to demonstrate that a miscarriage of justice occurred is also reasonable.  The record clearly does not support a finding that a conviction occurred of one who is innocent.

It is also a reasonable finding of the state court that Petitioner does not fall within the narrowly-carved Martinez exception to procedural default.  (Doc. at 35-36.)  He does not allege that his PCRA counsel was ineffective for failing to allege in his PCRA that trial counsel was ineffective to claim on direct appeal that the lack of recording the opening and closing arguments at trial denied Petitioner due process of law. Even if Petitioner had made such an argument, it would clearly be without merit in that Petitioner did not first exhaust the ineffectiveness claim.  See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Moreover, even if Petitioner's claim that trial counsel was ineffective for failing to request transcripts at trial was procedurally proper, it lacks merit.  There is no question after reading both the petition and the supporting memorandum that Petitioner appears to be asserting two different theories for the second ground of relief raised in his federal habeas petition.  Even if he is relying on ineffective

assistance of trial counsel in failing to request transcripts, and even if this ground was procedurally proper, it is without merit.

The <u>Strickland</u> court set forth the proper standard in analyzing an ineffective assistance of counsel claim. <u>See Strickland</u>, 466 U.S. 668 (1984). Pursuant to this standard, a petitioner must demonstrate that counsel's performance was deficient, and that such deficiency prejudiced the defense. <u>Id</u>. at 687. Petitioner must demonstrate that but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>See id</u>. at 686, 694.

The court must look to the particular facts of the case in an effort to determine whether an attorney's conduct fell below the standard of reasonableness, and it is highly differential. <u>See Strickland</u>, 466 U.S. at 689; <u>Senk</u>, 886 F.2d 611, 615 (3d Cir. 1989). The court does not engage in second-guessing when it comes to the performance of counsel during trial. <u>See Strickland</u>, 466 U.S. at 689.

In the instant case, trial counsel's performance did not fall below an objective standard of reasonableness as demonstrated by the record. First, Petitioner challenges counsel's failure to obtain the closing arguments of counsel. No one argues that the closing arguments were not transcribed, and as such, counsel cannot be found ineffective for not requesting something that did not exist. Counsel cannot be found unreasonable due to her failure to make such a request.

Moreover, the basis for Petitioner's argument that counsel was ineffective in

failing to make such a request was because Petitioner argues that the prosecutor made

an improper comment during the closing argument.  However, the record reflects that

Petitioner's trial counsel did not agree that an improper comment was made, or that

raising an objection during the prosecutor's closing argument was in Petitioner's best

interest.  The PCRA evidentiary hearing reveals the following testimony from

Petitioner's trial counsel on this matter:

> Trial counsel:    I do remember Ms. Castillo [the prosecutor] saying I
> love you to death.  I don't recall what she said
> immediately thereafter.  *I thought it was fair play in a
> closing argument, which defendants never like to
> hear.*
>
> Prosecutor:    I guess maybe another way of putting it is, it could
> have been a fair response to some of the lines of
> inquiry that you got into on cross-examination of
> [Stacie Daniels]?
>
> Trial counsel:    *I did not find it objectionable.  Unpleasant for the
> Defendant, yes, but not worthy of objection.*
>
> Prosecutor:    Did you also have a fear that maybe if you did object,
> the jury might focus on what was said immediately
> before the objection?
>
> Trial counsel:    Well, it's an art and not a science and *I did not
> think it [was] in my client's best interests to
> object during Ms. Castillo's closing.*

(Doc. 20-6 at 57-58.)(emphasis added.)

Even if the prosecutor made the "love you to death" remark during her closing,

the record establishes trial counsel's reasonable belief at the time that objecting was

not only unnecessary but also would not be in Petitioner's best interest. (<u>Id</u>.)  As such, this court finds that any claim by Petitioner that trial counsel was ineffective on said basis is without merit under the standard set forth in <u>Strickland</u>.

    In addition, the record fails to demonstrate that any prejudice was suffered by Petitioner.  Even if trial counsel should have and could have obtained the trial transcripts, the record reveals ample reasonable evidence that Petitioner's trial outcome would not have been different.  The record contains overwhelming evidence that Petitioner was guilty of the criminal conduct of which he was convicted.  It was up to the jury to accept or reject the evidence before them, and they accepted it.  Petitioner attempts to overcome all of the evidence presented at the trial by pointing to one comment made by the prosecutor during the closing.  This is not a reasonable basis upon which to argue that the outcome of the trial would have been different.  We also agree with the trial court's findings in ruling on Petitioner's PCRA claim regarding the lack of a closing argument record and that there was no prejudice.  There was no indication the prosecutor's comment was made more than once and, even if overzealous, prejudiced the jury.  The jury was able to interpret Petitioner's words and the jury was instructed by the trial judge with respect to the weight given to closing arguments.  The trial court's conclusion that Petitioner did not suffer any prejudice due to the prosecutor's argument was not unreasonable based on the record.  For these reasons, Petitioner's second ground is also without merit.

## VI.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). There is no basis for the issuance of a COA.

## VII.   Conclusion

In accordance with the foregoing, the petition for writ of habeas corpus is denied.  An appropriate order follows.